# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,         )
                                   )

    **v.**                   )  **Crim. ID No. 1605012921A**

                                   )  **Cr. A. Nos. IN17-11-1505 & 1507**

**DIAMONTE TAYLOR,**       )

             **Defendant**  )

Submitted:  March 2, 2026
Decided:  March 17, 2026

*Upon Defendant Diamonte Taylor's*
*Motions for Correction of Sentence and Appointment of Counsel,*
**DENIED.**

## <u>ORDER</u>

Upon consideration of the Defendant Diamonte Taylor's Motion for Correction of an Illegal Sentence (D.I. 229), and accompanying request for appointment of Rule 35(a) counsel (D.I. 230), and the record in this matter, it appears to the Court that:

(1) Through a series of superseding indictments returned in 2016 and 2017, the State charged Diamonte Taylor with one count of Gang Participation supported by fifteen underlying offenses, one count of Robbery First Degree, one count of Attempted Robbery First Degree, four counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), one count of Assault First Degree, two counts of Reckless Endangering First Degree, two counts of Aggravated Menacing, one count of Conspiracy

Second Degree, one count of Possession of a Firearm by a Person Prohibited ("PFBPP"), one count of Conspiracy First Degree, and one count of Murder First Degree.[1] These charges arose from a purported gang feud in the City of Wilmington between a street gang known as Shoot to Kill ("STK") and its alleged rival known as Only My Brothers ("OMB").[2] The ongoing gang rivalry allegedly resulted in various violent events, including the 2016 murder of Brandon Wingo.[3]

(2)     After a ten-day trial in 2018—the centerpiece of which was the slaying of Brandon Wingo—a jury convicted Mr. Taylor of first-degree murder, gang participation, two counts of felony reckless endangering, two count of PFDCF, two counts of aggravated menacing, and first-degree assault.[4]

(3)     Mr. Taylor appealed, and in September 2021, the Delaware Supreme reversed his murder conviction and remanded the matter for a new trial.[5]

---

[1]   D.I. 41 (Re-Indictment).  These counts were part of a resultant indictment that included other codefendants and counts against them.

[2]   *See State v. Taylor*, 2023 WL 8649421, at *1 (Del. Super. Ct. Dec. 14, 2023) (explaining the then-extant factual and procedural background of Mr. Taylor's case).

[3]   *Id.*

[4]   *Id.*  Mr. Taylor was found not guilty of certain robbery-related offenses and their associated counts of PFDCF.  D.I. 78.  Other counts of the indictment had been or were eventually dismissed.

[5]   *Taylor v. State*, 260 A.3d 602, 619 (Del. 2021).

(4)     His re-trial commenced in December 2023.[6]  But due to events that unfolded on the second trial day of that proceeding, a mistrial was granted.[7]

(5)     As motion practice was progressing towards a third trial, the parties reached a plea agreement.  Mr. Taylor pleaded guilty to the reduced charge of second-degree murder and one count of first-degree conspiracy.[8]  In his guilty plea papers and during his plea colloquy, he acknowledged  that he faced a sentence ranging from 15 years to life imprisonment for the murder count.[9]  And the parties expressly agreed to a joint recommendation including an unsuspended 15-year term of imprisonment.[10]  Though Mr. Taylor himself acknowledged that no promises were made as to the sentence he would actually receive.[11]

(6)     Mr. Taylor was sentenced several months later for the murder in the second degree count (IN17-11-1505) to 40 years at Level V suspended

---

[6]   D.I. 198.

[7]   *State v. Taylor*, 2023 WL 8649421, at *5.

[8]   *See* D.I. 221 (Plea Agreement and TIS Guilty Plea Forms).

[9]   Plea Agreement and TIS Guilty Plea Forms; Sept. 4, 2024 Plea. Hrg. Tr., at 12 (D.I. 233).  He faced an additional term of up to five years for the conspiracy count. *Id.*

[10]  Plea Agreement at 1 ("STATE AND DEFENDANT AGREE to recommend . . . Count 18 (Murder Second Degree) – 30 years Level V suspended after 15 years Level V (minimum mandatory) for . . ."); Sept. 4, 2024 Plea. Hrg. Tr., at 4, 7.

[11]  Sept. 4, 2024 Plea. Hrg. Tr., at 7, 12.

after 23 years for 2 years of intensive community supervision at various levels.[12]  So, his sentence is wholly consistent with the prescribed statutory sentence for second-degree murder.[13]  And while the sentencing judge did not accept the parties' recommendation to impose the 15-year minimum, there is nothing in the record suggesting Mr. Taylor was subject to any statutory enhancement of either the baseline minimum or maximum incarcerative term therefor.[14]

(7)     Nonetheless, Mr. Taylor now insists that his sentence is "illegal" and need of correction under this Court's Rule 35(a).  That rule permits this Court to correct an illegal sentence "at any time."[15]  Relief under Rule 35(a) is available when, *inter alia*, the sentence imposed:   exceeds the statutorily-authorized limits; omits a term required to be imposed by statute; is uncertain

---

[12]  D.I. 228 (Sentencing Order); Jan. 17, 2025 Sent. Hrg. Tr., at 44-45 (D.I. 234). Mr. Taylor's sentence for the conspiracy count was wholly suspended for probation, and does not appear to be challenged in this application.  *See* Sentencing Order, at 2; Jan. 17, 2025 Sent. Hrg. Tr., at 44.

[13]  *See* DEL. CODE ANN. tit. 11, §§ 635 and 4205(b)(1) (2015) (Murder in the second degree is a class A felony for which one must receive "not less than 15 years up to life imprisonment to be served at Level V").

[14]  *See* Jan. 17, 2025, Sent. Hrg. Tr., at 41-42 (sentencing judge recognizing the statutory minimum term of 15 years and the maximum sentence of life imprisonment as a possibility); *id.* at 42 (rejecting the recommendation of the minimum 15-year term and noting that, as a matter of her discretion, she "d[id] not believe a minimum mandatory sentence is appropriate in this case").

[15]  Super. Ct. Crim. R. 35(a) ("*Correction of sentence.* -- The court may correct an illegal sentence at any time . . .").

as to its substance; or, is a sentence that the judgment of conviction did not authorize.[16]

(8)     Mr. Taylor avoids any specifics about his actual case or sentence when joining many other sentenced inmates in filing the same handwritten form motion complaining that his sentence is illegal and he is due resentencing under the United States Supreme Court decision in *Erlinger v. United States*.[17]

(9)     In *Erlinger*, the United States Supreme Court considered a sentence imposed under the federal Armed Career Criminal Act and stated that "[v]irtually any fact that *increases the prescribed range of penalties* to which a criminal defendant is exposed must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)."[18]     But *Erlinger* is of no assistance to Mr. Taylor because his murder sentence wasn't—via some statutory mechanism—enhanced in any way on either the minimum end or at the maximum end.[19]     In fact, there is no such statutory

---

[16]     *Brittingham v. State*, 705 A.2d 577, 578 (Del. 1998).

[17]     *See State v. Morrison*, 2025 WL 1431931, at *2 (Del. Super. Ct. May 19, 2025) (citing *State v. Archy*, 2025 WL 1330215, at *2 (Del. Super. Ct. May 7, 2025) which made note of the "blizzard of *pro se* pleadings from inmates seeking relief" through resort to *Erlinger v. United States*, 602 U.S. 821 (2024)).

[18]     *Erlinger*, 602 U.S. at 834 (emphasis added).

[19]     *See Wheeler v. State*, 2025 WL 3296176, at *2 (Del. Nov. 25, 2025) (holding that *Erlinger* did not apply to the Rule 35(a) movant because his "sentencing judge made no factual findings concerning [his] criminal history that exposed him to higher minimum or maximum sentences" and his sentences were within the normal statutory range for the crimes); *Johnson v. State*, 2025 WL 2452107, at *2 (Del. Aug. 25, 2025) (*Erlinger* did not

-5-

enhancement mechanism for second-degree murder.[20]   And indeed, Mr. Taylor's 23-year term of imprisonment is well within the ordinary base minimum and maximum incarcerative term—*i.e.*, the normal "prescribed range of penalties"[21] for second-degree murder.[22]   So, *Erlinger* has no applicability here.

(10)   There is no demonstrable illegality in the substance of Mr. Taylor's sentence for second-degree murder.  Accordingly, he is due no relief under this Court's Criminal Rule 35(a).  That motion is **DENIED**.  And as this examination reveals he is manifestly ineligible for Rule 35(a) relief, there's no need to appoint him counsel to pursue his futile effort to press these arguments and seek it.[23]

**SO ORDERED,**

/s/ *Paul R. Wallace*_____
Paul R. Wallace, Judge

Original to Prothonotary- Criminal

---

apply when there was no enhancement of sentence based on Rule 35(a) movant's prior convictions and the sentence imposed fell in the regular relevant statutory range); *Morrison*, 2025 WL 1431931, at *2 ("[W]hile in his most recent prayer for sentencing relief, [movant] has joined chorus with so many other sentenced inmates incanting the United States Supreme Court decision in *Erlinger v. United States*, *Erlinger* can lend no voice here because his [ ] sentence wasn't enhanced in any way on either the minimum or maximum end.").

[20]   *See* n.13, *supra.*

[21]   *Erlinger*, 602 U.S. at 834.

[22]   *See* n.13, *supra.*

[23]   *See Morrison*, 2025 WL 1431931, at *2 n.17 (collecting cases).

cc:  Mr. Diamonte Taylor, *pro se*
     Benjamin S. Gifford, IV, Esquire
     John A. Barber, Esquire
     John S. Taylor, Deputy Attorney General
     Isaac A. Rank, Deputy Attorney General
     Investigative Services Office